IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

JUL 3 0 2019

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| JOHN MEYER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITEDHEALTHCARE<br>INSURANCE COMPANY,<br><br>Defendant. | CV 18–173–M–DLC<br><br>ORDER |

Before the Court is the Motion for Judgment on the Pleadings (Doc. 23) filed by Defendant UnitedHealthcare Insurance Company ("United"). United seeks to dismiss Plaintiff John Meyer's First Amended Complaint in its entirety as being preempted by federal law. United's Motion will be granted.

**BACKGROUND**

In October 2015, Meyer began receiving health care coverage from United. In December 2015, Meyer was involved in a life-threatening ski accident at Big Sky Resort in Big Sky, Montana. (Doc. 10 at 2.) Meyer was insured by United at the time of his accident. (*Id.* at 3.) Meyer's annual in-network out-of-pocket maximum was $6,000. (*Id.* at 5.)

-1-

As a result of the accident, Meyer was hospitalized for two weeks at the Billings Clinic in Billings, Montana, before being transferred to the Community Medical Center in Missoula, Montana, for "in-patient physical and mental rehabilitation." (Doc. 10 at 3.) Ultimately, Meyer was personally billed well over his $6,000 out-of-pocket maximum. (*Id.* at 7–8.)

Meyer originally brought suit in this Court in July of 2017, alleging claims against United under ERISA. (*Id.* at 6.) However, after United's Associate General Counsel informed Meyer that she believed that the group policies were not subject to ERISA, he agreed to dismiss his case without prejudice. (*Id.*) That case was dismissed on December 5, 2017. *Meyer v. UnitedHealthcare Ins. Co.*, No. CV 17–98–M–DLC, Doc. 5 at 1 (D. Mont. Dec. 5, 2017).

In his First Amended Complaint filed in this case, Meyer alleges three claims for relief under Montana's Unfair Trade Practices Act ("MUTPA"). (Doc. 10 at 10–12.) Meyer claims that United "engaged in unfair practices," "breached its contract," and "committed fraud" during its handling of his claim, all in violation of the MUTPA. (*Id.* at 10–12.) Meyer seeks general and compensatory damages, special damages, punitive damages, attorney fees, and injunctive relief regarding United's prospective billing practices. (*Id.* at 12.)

United insured Meyer through group policies issued to his then-employer Wildearth Guardians.[1] (Docs. 12 at 3–4; 12-1; 12-2.) At the time of his accident, Meyer was covered by the 2015 Policy. (Docs. 12 at 3–4; 12-1 at 12.) Meyer's continued treatment spanning into 2016 was covered by the 2016 Policy. (Docs. 12 at 3–4; 12-2 at 12.) Both policies contained provisions which required Wildearth Guardians to contribute "at least 50% of the Premium" for each of its eligible employees. (Docs. 12-1 at 12; 12-2 at 12.)

## LEGAL STANDARD

United filed its motion under Federal Rule of Civil Procedure 12(c). "The principle difference between motions filed pursuant to Rule 12(b) and 12(c) is the time of filing." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The latter provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, assuming the truth of the allegations in the non-moving party's pleadings, the moving party is entitled to judgment as a matter of law." *Rubin v. United States*, 904 F.3d 1081,

---

[1] The group insurance policies are incorporated by reference into Meyer's First Amended Complaint by his extensive reference to these documents, and the fact that the documents form the basis for his claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (Incorporation by reference may apply "when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan."). Accordingly, the Court may consider these materials "without converting the motion to dismiss into a motion for summary judgment." *Id.* And will do so here.

-3-

1083 (9th Cir. 2018). As with a motion filed under Rule 12(b)(6), a successful motion under Rule 12(c) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory.

## DISCUSSION

United claims that dismissal is warranted here because Meyer's insurance policies are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Consequently, United asserts that Meyer's claims under the MUTPA are preempted by ERISA's principles of both conflict preemption and express preemption. (Doc. 24 at 6.) For his part, Meyer asserts that there is a material fact at issue that prevents dismissal—whether his insurance policies are governed by ERISA. (Doc. 26 at 2–3.) The Court's analysis begins there.

### I. The Purview of ERISA

"ERISA is a remedial statute which Congress enacted to protect employee pension benefit rights and to protect employers from conflicting and inconsistent state and local regulations of pension benefit plans." *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991). ERISA applies to "any employee benefit plan" if it is established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An "employee benefit plan" is an "employee welfare benefit plan."

29 U.S.C. § 1002(3). An "employee welfare benefit plan" is any plan, fund, or program, that is maintained by an employer that was "established or is maintained for the purpose of providing" its participants, "through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits . . . ." 29 U.S.C. § 1002(1). Whether the insurance plan in question is an ERISA plan is a fact question to be decided in the context of all the surrounding circumstances by a reasonable person standard. *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998).

"To aid in the determination, the Secretary of Labor has issued an interpretive regulation that creates for certain employer practices a 'safe harbor' from ERISA coverage." *Id.* The regulation provides that a plan is exempt from ERISA when:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other

than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). All four requirements must be satisfied for the safe harbor to apply. *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir. 2000).

Despite Meyer's assertion to the contrary, whether or not the group insurance policies he was insured under are governed by ERISA is not "a material issue of fact that is in dispute." (Doc. 26 at 2.) Wildearth Guardians engaged United to provide a group insurance policy to its employees. (Docs. 12-1 at 2, 4, 12; 12-2 at 2, 4, 12.) The insurance provided by the group policies included certain health benefits. (Docs. 12-1 at 27–44; 12-2 at 27–45.) As the enrolling group, Wildearth Guardians needed to meet a "minimum participation requirement" and a "minimum contribution requirement." (Docs. 12-1 at 12; 12-2 at 12.) In other words, Wildearth Guardians needed to ensure that a minimum number of its employees attained insurance through the group policies and needed to pay for a portion of each premium. (Docs. 12-1 at 12; 12-2 at 12.) Because the group policies are maintained by Wildearth Guardians to provide benefits to employees through the purchase of health insurance, the Court is satisfied that a reasonable person would conclude that the group policies qualify as "employee welfare benefit plan[s]" governed by ERISA. That is, unless the plans meet all

four of the exemption requirements. *Stuart*, 217 F.3d at 1153. Here, Wildearth Guardians was required to pay at least half of the premiums for each employee and, consequently, the plans fail the first exemption requirement and do not qualify for the ERISA safe harbor. *Id.*

Meyer's argument that ERISA's application is in dispute relies entirely upon his assertion that United's Associate General Counsel "unequivocally stated that Meyer's insurance policy is not governed by ERISA." (Doc. 26 at 3.) However, the existence of this previous statement does not indicate a material issue of fact. As pointed out by United, although it is unfortunate that United communicated this mistaken belief to Meyer and that it was relied upon, its existence does not have any bearing on the above analysis determining the applicability of ERISA to the policy. (Doc. 27 at 4.) The statement made by United's Associate General Counsel is irrelevant to this Court's analysis of whether or not ERISA controls. And, consistent with the above analysis, the Court finds that ERISA does control in this case.

## II. ERISA Preemption

In order to achieve ERISA's purpose of providing "a uniform regulatory regime over employee benefit plans," ERISA includes "expansive pre-emption provisions." *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 208 (2004). These

provisions were "intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (internal quotation marks and citation omitted).

"There are two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). First, ERISA § 502(a), codified at 29 U.S.C. § 1132(a), provides a "comprehensive civil enforcement scheme," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), which preempts "any state-law cause of action that duplicates, supplements, or supplants" ERISA's civil enforcement scheme, *Aetna Health*, 542 U.S. at 209. This strand of preemption, known as conflict preemption, enforces the principle that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54.

Second, ERISA § 514(a), codified at 29 U.S.C. § 1144(a), provides ERISA's express preemption clause. ERISA § 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). But, § 514(b)(2)(A) provides a "savings clause" which exempts laws from the effect of § 1144(a) if they "regulat[e] commerce." 29 U.S.C.

§ 1144(b)(2)(A); *see also Pilot Life*, 481 U.S. at 45. The express preemption provisions of ERISA "are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life*, 481 U.S. at 45–46 (internal quotation marks and citation omitted).

Here, the Court has only United's arguments regarding the preemptive effects of ERISA in this case. In his response, Meyer only provided the argument discussed above, regarding the threshold issue of whether ERISA applies at all. (Doc. 26 at 2–3.) Consequently, the Court treats United's arguments concerning preemption as well-taken under Local Rule 7.1(d)(1)(B)(ii). Because the Court finds that ERISA governs Meyer's insurance policies, and United's arguments regarding ERISA's preemptive effect were well taken, the Court will grant United's Motion.

Before concluding, the Court must quickly address United's argument that dismissal in this case be made with prejudice. United asserts that "re-pleading under ERISA would be futile because [Meyer] has not exhausted his administrative remedies as required . . . ." (Doc. 24 at 22.) In support, United points to the affidavit of its counsel and to the fact that Meyer's Amended Complaint "is silent" as to his compliance with the administrative procedures. (*Id.* at 23.) Accordingly, United claims that "[a]ny effort to re-plead his claims under ERISA . . . would be

futile, and dismissal with prejudice is appropriate." (*Id.*) The Court disagrees. First, the Court will not rely on matters outside of the pleadings to determine whether or not Meyer complied with the administrative procedures United claims will bar any possible claim he could bring under ERISA. Second, the Court does not find the fact that Meyer did not address his compliance or non-compliance with ERISA's administrative procedures informative when Meyer was not drafting a complaint alleging claims under ERISA. Because the Court does not have the information necessary to determine whether or not Meyer may still bring viable claims under ERISA, the Court will not dismiss this case with prejudice. Accordingly,

IT IS ORDERED that United's Motion (Doc. 23) is GRANTED IN PART and this case is DISMISSED WITHOUT PREJUDICE.

DATED this 30th day of July, 2019.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court

-10-