FILED

OCT 28 2019

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| JOHN MEYER,<br><br>                Plaintiff,<br><br>vs.<br><br>UNITEDHEALTHCARE<br>INSURANCE COMPANY,<br><br>                Defendant. | CV 18–173–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiff John Meyer's ("Meyer") Motion for Reconsideration Under Federal Rules of Civil Procedure 59(e). (Doc. 32.) Meyer urges the Court to reconsider its Order dismissing his case without prejudice. (Doc. 28.) There, the Court granted Defendant UnitedHealthCare Insurance Company's ("United") motion for judgment on the pleadings after concluding that: (1) ERISA governs Meyer's insurance policies; and (2) because Meyer failed to respond, United's argument that ERISA preempts his claims is well taken. (*Id.* at 7, 9.) Meyer now contends that his failure to provide a counter-argument on the preemption issue was excusable neglect that justifies the Court's reconsideration. (Doc. 33 at 3.) The Court agrees.

-1-

## BACKGROUND

In October 2015, Meyer began receiving health care coverage from United. United insured Meyer through group policies issued to his then-employer Wildearth Guardians.[1] (Docs. 12 at 3–4; 12-1; 12-2.)

In December 2015, while he was covered by United, Meyer was involved in a life-threatening ski accident. (Doc. 10 at 2–3.) Meyer's annual in-network out-of-pocket maximum was $6,000. (*Id.* at 5.) Meyer was hospitalized for two weeks at the Billings Clinic in Billings, Montana, before being transferred to the Community Medical Center in Missoula, Montana. (Doc. 10 at 3.) Ultimately, Meyer was personally billed well over his $6,000 out-of-pocket maximum. (*Id.* at 7–8.)

Meyer originally brought suit in this Court in July of 2017, alleging claims against United under ERISA. (*Id.* at 6.) However, after United's Associate General Counsel informed Meyer that she believed that the group policies were not subject to ERISA, he agreed to dismiss his case without prejudice. (*Id.*; *see also Meyer v. UnitedHealthcare Ins. Co.*, No. CV 17–98–M–DLC, Doc. 5 at 1 (D. Mont. Dec. 5, 2017)).

---

[1] The group insurance policies are incorporated by reference into Meyer's First Amended Complaint by his extensive reference to these documents, and the fact that the documents form the basis for his claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (Incorporation by reference may apply "when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan.").

In his First Amended Complaint in this case, Meyer alleged three state law claims under Montana's Unfair Trade Practices Act ("MUTPA"). (Doc. 10 at 10–12.) Specifically, he claimed that United "engaged in unfair practices," "breached its contract," and "committed fraud" during its handling of his claim. (*Id.* at 10–12.) Meyer sought general and compensatory damages, special damages, punitive damages, attorney fees, and injunctive relief regarding United's prospective billing practices. (*Id.* at 12.)

United moved for judgment on the pleadings (Doc. 23), arguing that ERISA governs the policies at issue and, therefore, federal law preempts Meyer's state-law claims (Doc. 24). After considering whether the "safe-harbor" described by *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998) exempted Meyer's group policies from ERISA, the Court concluded that ERISA does control in this case. (Doc. 28 at 5, 7.) Meyer only provided an argument regarding this threshold issue of whether ERISA applies at all. (Doc. 26 at 2–3.) Therefore, pursuant to Local Rule 7.1(d)(1)(B)(ii), the Court treated as well-taken United's next argument concerning ERISA's conflict and express preemption of Meyer's claims, and it accordingly granted United's motion. (Doc. 28 at 9.)

Now, Meyer moves the Court to reconsider the preemption issue, arguing that his failure to address it in his response brief was excusable neglect based on

United's alleged "misrepresentation, misconduct, and fraud," and as a result, he "has experienced injury and circumstances beyond his control." (Doc. 33 at 3, 33.)[2]

## LEGAL STANDARD

By empowering a district court to vacate its own judgment "when the equities so demand," *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998), Federal Rule of Civil Procedure 60 "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done," *Delay v. Gordon*, 475 F.3d 1039, 1045 (9th Cir. 2007) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2851 (2d ed. 1995)). Therefore, upon "just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" based on, *inter alia*: "excusable neglect;" "fraud . . . misrepresentation, or misconduct;" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (3), (6).

---

[2] While United has not timely responded to Meyer's Rule 60(b) motion, such a response is not necessary since it would not elucidate any information that has not already been discussed. *See Schleusner v. Continental Cas. Co.*, No. CV 14-221-M-DWM, 2015 WL 2342507, at n.1 (D. Mont. May 14, 2015).

-4-

Rule 60(b) "does not particularize the factors that justify relief; [instead] it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *United States v. Washington*, 98 F.3d 1163 (9th Cir. 1996) (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)). And, while a district court has "wide discretion in passing upon on motion under [Rule] 60(b)," the Ninth Circuit emphasizes that "the policy of the law is to favor a hearing of a litigant's claim on the merits." *Russell v. Cunningham*, 279 F.2d 797, 804 (9th Cir. 1960).

"Excusable neglect encompass[es] . . . omissions caused by carelessness" and, as its name suggests, "includes cases of negligence." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (alteration in original) (internal citations omitted). When a party argues for relief based on his "excusable neglect" under Rule 60(b)(1), "the court must consider all relevant circumstances." *M.D. by and through Doe v. Newport-Mesa Sch.*, 840 F.3d 640, 642 (9th Cir. 2016) (per curiam) (citations and internal quotation marks omitted).

To decide whether neglect is excusable, "district courts should explicitly use the *Pioneer-Briones* framework for analysis." *Lemoge*, 587 F.3d at 1192. The equitable *Pioneer-Briones* analysis requires a district court to examine "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on proceedings; (3) the reason for the delay; and (4)

whether the movant acted in good faith." *Id.* (quoting *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000)). Furthermore, while discussion and analysis under the *Pioneer-Briones* framework is required, "the district court may consider [] the factors without discussing how much weight it gives to each." *Newport-Mesa Sch.*, 840 F.3d at 643. Additionally, though not an explicit *Pioneer-Briones* factor, prejudice to the movant may be "one of the 'relevant circumstances' that should be considered when evaluating excusable neglect." *Lemoge*, 587 F.3d at 1195.

## DISCUSSION

Taking the *Pioneer-Briones* factors in turn, the Court finds that it is unlikely that United would be prejudiced if relief were granted to Meyer. "Prejudice requires greater harm than simply that relief would delay resolution of the case." *Id.* at 1196 (citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)). Here, because it formed the basis for United's motion for judgment on the pleadings, United has already presented its arguments on the preemption issue. (Doc. 24 at 12–22.) Additionally, United anticipated and addressed Meyer's saving clause argument that he failed to make in his response brief (Doc. 26), but that he now advances in his motion for reconsideration (*see* Docs. 24 at 13–22; 33 at 11–12). Therefore, if the Court grants Meyer's motion to reconsider the merits of his saving clause argument, United's burden to respond would likely be

minimal. In other words, to respond to Meyer's argument would require only that United tailor its original research and analysis to focus on whatever specific points Meyer makes. The loss of United's "quick but unmerited victory" is not prejudicial. *See Newport-Mesa Sch.*, 840 F.3d at 643. Because the harm to United is only that relief would delay resolution of the case, it does not rise to the level of prejudice contemplated by *Pioneer-Briones*.

Although the first *Pioneer-Briones* factor weighs in favor of granting Meyer's motion, it is counter-balanced by the lack of prejudice to Meyer if the Court denies it. Rule 60(b)(1) movants "suffer substantial prejudice absent relief [when] they cannot re-file their action." *Lemoge*, 587 F.3d at 1196. Here, the Court specifically rejected United's contention that Meyer's case should be dismissed with prejudice. (Doc. 10 at 10.) Instead, it dismissed the action without prejudice, "because the Court does not have the information necessary to determine whether or not Meyer may still bring viable claims under ERISA." (*Id.*) Unlike movants who "would endure the ultimate prejudice of being forever barred from pursuing their claims," *Lemoge*, 587 F.3d at 1196, if the Court denies Meyer relief, he can file "a new ERISA complaint." (Doc. 33 at 9.) Neither Meyer nor United contend that a statute of limitations or other restriction would bar him from doing so. Considering the "relevant circumstance" of prejudice to Meyer if his requested relief is denied, the Court finds none; thus, the Court concludes that

"prejudice to the parties is in equipoise." *See S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010).

As to the second *Pioneer-Briones* factor, an analysis of "the length of the delay"[3] and its potential impact on the judicial proceedings weighs in Meyer's favor. Under Rule 60(c), "Rule 60(b) motions [must] be made within a reasonable time and no more than a year after the entry of the judgment or order." *Lemoge*, 587 F.3d at 1196 (internal quotation marks omitted).

> What constitutes 'reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.

*Id.* at 1196–97 (quoting *Ashford v. Stewart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam)). Meyer, proceeding pro se, filed his Rule 60 motion less than two weeks after the Court entered its Order dismissing his case. The Ninth Circuit has found far longer delays excusable under Rule 60(b)(1). *See, e.g., Bateman*, 231

---

[3] The Ninth Circuit equivocates about whether the relevant "delay" relates to the movant's delay in filing his Rule 60 motion, or to the delay that led to the underlying judgment. Using the former characterization of "delay," the *Lemoge* Court determined that the plaintiffs' seven-month delay in seeking relief under Rule 60 after dismissal was reasonable. 587 F.3d at 1196–97. More recently, the *Newport-Mesa School* Court used the latter characterization of "delay." There, the district court dismissed for failure to file "within the time allowed" when the plaintiffs failed to meet the filing deadline for their second amended complaint by two days. *Newport-Mesa Sch.*, 840 F.3d at 642. Without addressing the gap between dismissal and the plaintiffs' Rule 60 motion, the Ninth Circuit reversed, noting that it has found reasonable delays far longer than a filing deadline missed by two days. *Id.* at 643. To support its conclusion, though, the Court cited *Bateman*, 231 F.3d at 1223, in which the *Lemoge* characterization of "delay" controls. *Id.* Therefore, the Court's analysis of this factor through the lens of *Lemoge* and *Bateman* falls safely within the Ninth Circuit's treatment of "delay."

F.3d at 1223 (over a month-long delay in filing a Rule 60(b) motion) (citing *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (two-week delay in filing Rule 60(b) motion)); *Lemoge*, 587 F.3d at 1197 (about a seven-month delay in filing Rule 60(b) motion). Furthermore, not only was Meyer's motion filed well within the one-year deadline imposed by Rule 60(c), he filed it within the fourteen-day deadline prescribed by the Local Rules for response briefs. *See* L.R. 7.1(d)(1)(B). Therefore, Meyer adhered to a timeline during which other litigants are held responsible for "learn[ing] . . . of the grounds relied upon." In this case, those grounds are the Court's basis for treating United's argument as well-taken—his failure to respond and the application of the Local Rule. Therefore, because the length of delay is reasonable, the Court finds that the second *Pioneer-Briones* factor weighs in favor of granting Meyer relief.

Turning to the third factor, however, the Court finds Meyer's reason for his delay in responding to the preemption issue to be weak. "There must be some obedience to the rules of court; and some respect shown to the convenience and rights of other counsel, litigants, and the court itself." *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962). The Local Rules clearly state: "failure to file a response . . . may be deemed an admission that the motion is well-taken." L.R. 7.1(d)(1)(B)(ii).

Meyer blames United for his failure to adhere to the Court's rules, which he supports by citing to an inapposite portion of *Bateman*, 231 F.3d at 1220. (Doc. 33

at 9.) He goes on to contend that United "brought this delay on itself by trying to cover up its misrepresentation, misconduct, and fraud." (*Id.*) Meyer fails to explain why any alleged misconduct on the part of United led to his disobedience to the Local Rules of the Court. As the Court explained previously, it is indeed unfortunate that, in the previous iteration of this case, counsel for United conveyed to Meyer her mistaken belief that ERISA did not govern the policies. (Doc. 28 at 7.) How this event prevented Meyer from fully responding to United's motion in the instant case, however, is unclear. Regardless of any prior statements to the contrary, United clearly set out the grounds for its motion for judgment on the pleadings: (1) that Meyer's policies are governed by ERISA; and (2) that ERISA preempts all of Meyer's state law claims. (*See* Doc. 24 at 10, 12.) Meyer simply did not respond to United's second argument, and pursuant to the Local Rules, the Court deemed it well-taken. Therefore, because Meyer baldly failed to obey court rules, the Court concludes that the third factor, reason for delay, weighs against granting him relief.

The Court concludes its *Pioneer-Briones* analysis by finding that, while the reason for Meyer's delay is poor, it doesn't show bad faith. "Where [an] error results from negligence and carelessness, not from deviousness or willfulness," a district court's finding a lack of bad faith is appropriate. *See Newport-Mesa School*, 840 F.3d at 643 (quoting *Lemoge*, 587 F.3d at 1197). So, although

Meyer's failure to adhere to the Local Rules shows a lack of regard for his own interests and the Court's docket, there is no evidence that he acted with anything less than good faith. *See Bateman*, 231 F.3d at 1225.

Although "the district court may consider [] the *Pioneer-Briones* factors without discussing how much weight it gives to each," Newport-Mesa Sch., 840 F.3d at 643, the Court finds "the lack of any prejudice [to United] or to the interests of efficient judicial administration, combined with the good faith of [Meyer], weigh strongly in favor of permitting" reconsideration the merits of the preemption issue, *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397–98 (1993). And, despite his weak reason for failing to respond to United's preemption argument pursuant to court rules, Meyer quickly moved for the Court's reconsideration of the issue.

## CONCLUSION

"The policy of the law is to favor a hearing of a litigant's claim on the merits," *Russell*, 279 F.2d at 804, and Rule 60(b) "is meant to be remedial in nature and therefore must be liberally applied," *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). With those broad policy goals in mind, and after balancing the *Pioneer-Briones* factors, the Court finds that the equities weigh in Meyer's favor.[4]

---

[4] Meyer also argues that he is entitled to relief under FED. R. CIV. P. 60(b)(3) and FED. R. CIV. P. 60(b)(6). However, because the Court finds that he is entitled to relief under the *Pioneer-*

-11-

When a court decides to reopen a judgment, it "has further discretion to impose those conditions it deems fit, with the moving party then having the choice either of complying with the conditions or allowing the judgment to stand." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2857, 330 (3d. ed. 2012).

Although Meyer concludes his motion for reconsideration by asking the Court to "set aside its order and judgment holding [his] state law claims are preempted," the Court is unpersuaded that this is the appropriate relief. Presumably to avoid the Court's denial of his instant motion on the ground that his saving clause argument is without substance, Meyer briefly—in about two pages—addresses his view that his state-law claims are saved from ERISA preemption. (*See* Doc. 33 at 11–12.) Furthermore, he applies ERISA's saving clause to his claims in one sentence, which he follows with a conclusory statement that his claims satisfy both prongs of the clause. (*Id.* at 12.) This argument, while adequate to preserve the issue for reconsideration, is inadequate for the Court to issue a ruling on the merits.

Accordingly, IT IS ORDERED that Meyer's Rule 60 motion (Doc. 32) is GRANTED to the extent that the Court's Order (Doc. 28) finding that United's

---

*Briones* analytical framework for Rule 60(b)(1), it is unnecessary for it to determine whether Meyer is entitled to relief under the other provisions.

arguments regarding ERISA's preemptive effect are well-taken is VACATED. However, the Court's Order finding that ERISA controls this case REMAINS in full force and effect. Furthermore, IT IS ORDERED that:

(1) Meyer shall file his brief on the issue of ERISA's preemptive effect on or before November 11, 2019; and

(2) United shall file its response brief on or before November 25, 2019; and

(3) No reply briefs shall be filed.

DATED this 28th day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court