IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

MAY 0 4 2020

Clerk, U.S. District Court
District Of Montana
Missoula

JOHN MEYER,

Plaintiff,

vs.

UNITEDHEALTHCARE
INSURANCE COMPANY,

Defendant.

CV 18–173–M–DLC

ORDER

On October 28, 2019, this Court granted Plaintiff John Meyer's Motion for

Reconsideration. (Doc. 34.) Concluding that Meyer's neglect to do so previously

was excusable, the Court provided Meyer an opportunity to brief his ERISA

preemption argument and allowed Defendant UnitedHealthcare Insurance

Company ("United") to file a response. (*Id.* at 13.) No reply briefs were

permitted. (*Id.*) The parties have filed their respective briefs (Docs. 35; 37), and

for the following reasons, the Court finds that United advances the stronger

argument. Therefore, the Court's previous judgment on the pleadings will stand.

## BACKGROUND

Following a catastrophic ski accident in 2015, Meyer received treatment at

Billings Clinic. (Doc. 22 at 5.) At all pertinent times, Meyer was insured under

group policies issued by United to his employer. (*Id.* at 4.) Under both policies, Meyer's annual in-network out-of-pocket maximum was $6,000. (*Id.*) However, following his treatment at Billings Clinic, an in-network provider, Meyer received a bill for $6,017.27. (Doc. 10 at 5.) The dollar amount in dispute is $17.27.

In 2017, Meyer sued United in *Meyer v. UnitedHealthcare*, No. 17–cv– 00098–DLC ("2017 Action"). (Doc. 22 at 5.) There, he alleged claims under the Employee Retirement Income Security Act ("ERISA"). (*Id.* at 6.) After attempting to reach Meyer's attorney by phone, United's Associate General Counsel sent him an email asking to discuss Meyer's "purported ERISA case" and stated that United's "records reflect that Mr. Meyer is on a small group Non-ERISA plan and as such the ERISA action is not appropriate and should be dismissed." (Doc. 10 at 6.) Thereafter, the parties entered a tolling agreement and agreed to dismiss the 2017 Action. (Doc. 22 at 5.) Following Meyer's motion, which stated that the parties "need more time to exchange information so that informed decisions may be made regarding the case," the Court dismissed the 2017 Action without prejudice on December 5, 2017. (Docs. 4 at 1–2; 5.)

Now, in the instant action, Meyer advances three state law claims under Montana's Unfair Trade Practices Act ("MUTPA"). (Doc. 10 at 10–12.) First, Meyer asserts that United acted unfairly by permitting Billings Clinic to bill him

more than the $6,000 in-network maximum, in violation of MUTPA § 33–18–102. (*Id.* at 11.) Second, he claims that United breached its contract, in violation of MUTPA § 33–18–242, by: failing to maintain accurate records; failing to pay providers for services once Meyer paid the out-of-pocket maximum; and, again, allowing Meyer to be billed more than the maximum by service providers. (*Id.*) Third, Meyer contends that the same acts—maintaining inaccurate records, failing to pay providers, and allowing him to be billed beyond the out-of-pocket maximum—amounted to fraud, in violation of MUTPA § 33–18–242. (*Id.* at 11– 12.) Meyer seeks general and compensatory damages, special damages, punitive damages, attorney fees, and injunctive relief regarding United's prospective billing practices. (*Id.* at 12.)

United moved for judgment on the pleadings (Doc. 23), arguing first that ERISA governs the group policies, and second, that ERISA's preemptive effect forecloses Meyer's state law claims. (Doc. 24). As to the threshold question of ERISA's applicability, the Court acknowledged that United communicated its mistaken belief to Meyer's counsel during the 2017 Action. (Doc. 28 at 7.) Be that as it may, though, the Court concluded no "safe-harbor" sheltered the policies from ERISA's sweep. (Doc. 28 at 5, 7 (citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998)).) Meyer only provided an argument

regarding the first question of ERISA's applicability.  (Doc. 26 at 2–3.)  Therefore, pursuant to Local Rule 7.1(d)(1)(B)(ii), the Court deemed United's position concerning ERISA's conflict and express preemption well-taken, granted United's motion in part, and dismissed the case without prejudice.  (Doc. 28 at 9–10.)

Meyer moved the Court to reconsider the preemption issue, arguing that his failure to address it in his response brief was excusable neglect.  (Doc. 33 at 3, 33.) After conducting a *Pioneer-Briones* analysis, *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009), the Court determined that the equities tipped in Meyer's favor.  (Doc. 34.)  Accordingly, pursuant to Federal Rule of Civil Procedure 60(b)(1), the Court vacated its previous Order (Doc. 28) to the extent that it deemed United's preemption argument well-taken and ordered the parties to present the Court with their respective positions on the issue.

## LEGAL STANDARD

The Court granted Meyer relief from its previous judgment on the pleadings. (*See* Doc. 28.)  Therefore, on reconsideration and pursuant to Federal Rule of Civil Procedure 12(c), the Court again assumes the truth of the allegations in Meyer's pleadings to determine whether United is entitled to judgment as a matter of law. *See Rubin v. United States*, 904 F.3d 1081, 1083 (9th Cir. 2018) (stating the circumstances under which a judgment on the pleadings is properly granted).

Again, except for the time of filing, a Rule 12(c) motion is "functionally identical"

to a Rule 12(b)(6) motion to dismiss and "the same standard of review" applies to

motions brought under either rule. *Cafasso v. Gen. Dyamics C4 Sys., Inc.*, 637

F.3d 1047, 1054 n.4 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc.*, 867

F.2d 1188, 1192 (9th Cir. 1989)). Therefore, to survive United's motion for

judgment on the pleadings, the Court must find Meyer's Amended Complaint

advances a plausible legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As made explicit previously, the question of whether ERISA governs the

policies is moot.[1] (*See* Docs. 28; 34.) The only question presented for the Court's

reconsideration is whether ERISA preempts Meyer's MUTPA claims.

---

[1] When the Court granted Meyer's motion for reconsideration, it strictly cabined the scope of its review. (Doc. 28 at 12–13.) Still, Meyer ignores the Court's bright line parameters and attempts to relitigate the issue of ERISA's application. (Doc. 35 at 3–6.) The Court declines to entertain this argument. It briefly will note, however, that it finds Meyer's judicial estoppel argument misplaced. Judicial estoppel "is intended to prevent improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted). Here, there is no evidence that United misused the judicial machinery. In the 2017 Action, Meyer, who was then represented by counsel, apparently looked only to United's preliminary assessment of its records to decide whether to dismiss the case. (Docs. 26 at 3; 35 at 6.) But, whatever its initial review of its records revealed, United never advanced its mistaken view to the Court. In fact, United did not even appear in the 2017 Action before Meyer's counsel moved for dismissal, citing only the parties' "need [for] more time to exchange information so that informed decisions may be made regarding the case[.]" (2017 Action, Doc. 4.) Regardless of whether Meyer's former counsel wholly adopted United's initial position on ERISA's applicability, United did not succeed in persuading the Court to accept it. The Court was not misled, then or now. *See New Hampshire*, 532 U.S. at 750. Therefore, even if this argument was properly before the Court on reconsideration, judicial estoppel is unwarranted here.

## DISCUSSION

Aimed at providing a "uniform regulatory regime over employee benefit plans," ERISA includes "expansive pre-emption provisions." *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 208 (2004). "There are two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). First, conflict preemption, 29 U.S.C. § 1132(a), enforces the principle that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Second, under ERISA's express preemption clause, all state laws are preempted "insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). However, state "law[s] . . . which regulat[e] insurance, banking, or securities" are saved from express preemption. *Cleghorn*, 408 F.3d at 1225 (quoting 29 U.S.C. § 1144(b)(2)(A)) (alterations in original).

A finding of preemption under either strand of ERISA's preemptive force—conflict or express—is dispositive. *See Cleghorn*, 408 F.3d at 1225. Because Meyer starts his analysis with conflict preemption, so too will the Court.

Conflict preemption advances "ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002). Accordingly, ERISA's private enforcement provision, 29 U.S.C. § 1132, is "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1144 (9th Cir. 2003) (quoting *Pilot Life*, 481 U.S. at 52)). Consequently, state laws that "provide[] a form of ultimate relief in a judicial forum that add[] to the judicial remedies provided by ERISA" are incompatible with, and preempted by, ERISA's enforcement scheme. *Rush Prudential HMO, Inc.*, 536 U.S. at 379.

A lawsuit that seeks "non-ERISA damages for what are essentially claim processing causes of action[] clearly falls under [] § 1132 [conflict] preemption." *Elliot*, 337 F.3d at 1147. Claims under MUTPA squarely fall into this preempted category, as it "provides damages above and beyond those provided in ERISA, including punitive damages." *Id.*; *see also Collection Bureau Servs. v. Birnel*, 2006 WL 8435932, at * 3 (D. Mont. Aug. 2, 2006) (applying *Elliot*'s rationale to find that ERISA preempts a claim under MUTPA § 33–18–201).

-7-

Acknowledging that *Elliot* otherwise lands on all fours to instruct a conflict preemption determination here, Meyer argues that the 2017 Action saves his case. (Doc. 35 at 6.) He highlights the *Elliot* Court's statement that the plaintiff there "relie[d] in the first instance on Montana's UTPA's civil enforcement provision" to distinguish his case from hers. *See* 337 F.3d at 1147. He insists that, unlike the *Elliot* plaintiff, he did not bring state law claims "in the first instance"—the initial 2017 Action was filed under ERISA. (*Id.*)

However, Meyer overemphasizes and misreads *Elliot*'s "first instance" language. The *Elliot* Court explained that its holding caused no friction with a then-recent Supreme Court decision that questioned the scope of conflict preemption. 337 F.3d at 1147 (citing *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358 (1999) ("*UNUM*")). There, the plaintiff filed his case under ERISA. *UNUM*, 526 U.S. at 363. In response to the insurer's defense that his claim was untimely, the plaintiff relied on California's "notice-prejudice" rule to save it. *Id.* at 365. When UNUM replied that ERISA's civil enforcement provision preempts any action for plan benefits brought under state rules such as notice-prejudice, the Court dismissed the argument as irrelevant. *Id.* at 376. Because the *UNUM* plaintiff sued under ERISA, the notice-prejudice rule only "supplied the relevant rule of decision for this § 502(a) suit. The case therefore [did] not raise the

-8-

question whether § 502(a) provides the sole launching ground for an ERISA

enforcement action." *Id.* at 377.

In contrast, the *Elliot* plaintiff's claim—like Meyer's—relied "in the first

instance on Montana's UTPA's civil enforcement provision" to recover "non-

ERISA damages for what are essentially claim processing causes of action." 337

F.3d at 1147. Unlike in *UNUM*, where the state law in question supplied only the

rule of decision in an ERISA case, in *Elliot*, the state law—MUTPA—provided the

sole ground for recovery. That is, the *Elliot* Court's "first instance" language

means to distinguish an ERISA case where state law supplies the rule of decision

against a non-ERISA case relying solely on state law to recover non-ERISA

damages.

Therefore, this Court is unpersuaded that any daylight exists between *Elliot*

and Meyer's case. Whatever umbrage Meyer takes with the communications

between United and his attorney in the 2017 Action is irrelevant to the question of

whether ERISA's civil enforcement provision preempts his MUTPA claims.

Meyer's effort to shoehorn additional claims into his brief on reconsideration

further convinces the Court that *Elliot* forecloses the his three live MUTPA counts.

Accordingly, under *Elliot*, the Court finds that Meyer's three MUTPA

claims are preempted by ERISA's civil enforcement provision, rendering analysis

under the express preemption strand unnecessary. *See Cleghorn*, 408 F.3d at 1225.

## ORDER

On reconsideration, IT IS ORDERED that this Court's July 30, 2019 (Doc.

28) STANDS.  Accordingly, this matter is DISMISSED WITHOUT PREJUDICE.

DATED this 4th day of May, 2020.

Dana L. Christensen, Chief Judge
United States District Court

-10-